Case 20-3337. Angela Harrison v. Life Insurance Company of North America. Oral argument, 15 minutes per side. Mr. Mary for the appellant. Thank you. Good morning. May it please the court. We brought this appeal to address two legal issues. Whether Harrison or Lina has the burden of proof on the application of the pre-existing condition exclusion and whether the language in the exclusion should be construed broadly or narrowly. In its response, Lina has added a third legal issue, whether it is entitled to what the court has referred to as firestone deference. With respect to the legal issues, in my view, the case law is clear that the insurer bears the burden of proof on an exclusion. There are reported and non-reported cases that hold that and the district court, in my view, just missed that one. With respect to the standard of review, as the court said in Clemens, if Lina wants firestone deference, it should get it on purpose, not the result of an ambiguity. The language in the plan just says simply that Lina is asking for satisfactory proof of disability. The district court held that Lina's language did not even measure up to Perez, and Perez is a fairly generous standard. How would you address Frazier, which seems to have almost identical language? I think the difference in Frazier, and we referred to that in our brief, is that the issue in Frazier was whether the individual was disabled. It did go to the question of satisfactory proof of disability. Frazier did not involve construing any plan language. Frazier did not involve how you apply an exclusion. Frazier did not really touch on any of the issues. If we were to concede that Lina has got deference, I think what Lina's has always been is they think firestone deference means if we get deference, we win. That's not what this court has ever said. The 10th Circuit and Hodges talked about that. That even if we're affording deference, there's a deference as to what. I think the earlier cases that Lina cited in their brief all go to the issue of whether they're entitled to a certain level of proof as to disability. That's not disputed in this case. The district court held it, and I know Lina's argued or mentioned, at least in their brief, that they didn't reach the conclusion that Ms. Harrison was disabled. As we pointed out, I don't think you get to the exclusion until you get to the principle item of coverage. Mr. Murray, there are a lot of arguably interesting sidelights to this case about standard of review, deference, burden of proof, all those things. You only have 15 minutes here. If I could get you to cut to the chase, it seems to me very clear on this record that your client had a pre-existing condition, i.e., depression, for which she was receiving treatment and taking medicine during the exclusionary period. Is that right or wrong? That's correct. No dispute about that. The underlying question here, regardless of all these other interesting issues, is did that contribute to her disability that she is now claiming based upon this subsequent diagnosis? Am I right so far? Yes, you are. I mean, even her own doctors say that it contributed to it. If we just strip all this other stuff away, I'm at a loss to figure out how you ultimately win, even if you get de novo review and even if the burden of proving the exclusion is on the insurance company. Thank you, Your Honor. Three points with respect to that. First of all, almost everybody that has a disability claim also has depression and they're almost always treated for it. It's just because they can't work, they hurt, they don't have income, whatever. So you'll find that that was the case in the Okuno case. There were references all the way through the record about her receiving treatment for depression, but the depression was the or the second point on the issue of disability is disability is defined in the policy as inability to do the job. So if, for example, she is disabled by a physical cause, the fact that depression makes it worse doesn't matter for purposes of the claim, because if she already is disabled because she's got a brain injury, then the fact- and we have that Okuno case that's suggesting it's but-for-cause. But her own doctors suggested that it wasn't a but-for-cause and it seems like she was able to work even though she had this RHDD for nine months. And then Dr. Julie Szyminski said it was really the depression and anxiety that caused the downward spiral and that caused to reach the level of disability. So it was the combination of the RHDD plus the depression and anxiety, which is what put her over the top, so to speak, to make her unable to work 10 months on the job. So why wouldn't that suggest that depression and anxiety were the but-for-causes of the disability? Well, she also worked, she's worked for her whole life with depression and anxiety. The other point I'd make with respect to if she just applied for disability based upon the depression, she wouldn't get it. She was not being treated by a psychiatrist. She was not regularly in counseling. Her therapy levels were-the level of medication was not-they were actually fairly low doses. And I think the one of the medications she was taking was actually the treated eating disorder, not depression. So once again, if the issue is that she's got this ingrained effect that-and, you know, it's the fact that she couldn't do the math, couldn't occupy the-or couldn't multitask, that sort of stuff. The fact that the depression made her sicker doesn't still answer the question about was she disabled from the job to start with? Well, I thought the question was whether the pre-existing conditions contributed to her inability to work. And even under Akuna's narrow interpretation of that phrase to mean essentially but-for-cause, meaning if she didn't have depression and anxiety, she would be able to the two letters in the record from her-both of her doctors seem to suggest that what was really over time at work causing her not to be able to work was the depression and anxiety. Dr. Siminski says, well, Mrs. Harrison's cognitive limitations related to her diagnosis of a nonverbal learning disability, right hemisphere deficit syndrome, are developmental in nature. These limitations are currently being worsened by her depression and anxiety, which is resulting in part from work-related stressors. So it sounds like it's a downward spiral, but what's causing the inability to work ultimately from my reading of these letters, and so they are but-for-cause, is that it's the depression and anxiety from her inability to do the job making it worse and worse, and then eventually making her just so anxious she can't perform her duties. And that's the-isn't that the key question? It's whether this-the depression or anxiety were the but-for-cause? Well, the interest-I think the interesting question is if she can't perform the duties because she's got the brain disease, and then-and-and then she becomes more anxious because she can't perform the duties because she has the-the brain deficit. It gets to be a little bit of a-a little bit of a circle, and- I agree with that, but don't you-I mean, she was able to perform the duties for 10 months. She did perform on the job for a long part of the time, and then-and so-so the key question is what put her over the top, so to speak? What was the straw that broke the camel's back? And-and here, it seems from the records, from the letters, it was the worsened depression and anxiety. Well, except, Your Honor, the look-back in-during the look-back period, which-which was a year before the spiral, the medication that she was taking was just routine things that she'd been taking for a good deal-a good deal of time. And the thing I'd point out is that Lyna, when it-it specifically asked its two expert physicians to opine on whether they thought that the pre-existing condition was-was- whether she was disabled by a pre-existing condition, both of them said no. So, I think that, you know, on this record, the-the evidence is actually somewhat unclear, which is why I think the verdict would prove that. Well, let's-let's look for just a second to make sure that I-I got this straight at-at what your own client said. She said in her letter to Lyna that her-it was her job that caused her depression, tension, headaches, and ADD to get out of control. Seems to me that's but for cause. Nobody that I can find says that her problem was-was this hemispheric development disorder. Did I miss something? Well, no, Your Honor, I don't-I don't think you missed something, but I-but I think the-the fair reading of the neuropsych evaluation is that all of this stuff stems from the-from the right hemisphere brain disorder. It-it-it-it's attributable to that, which wasn't diagnosed. So, you know, whether-whether the client was depressed because the brain disorder prevented her from doing the math, that all-that's all, you know, subsequent to the-subsequent to the time she became disabled. I guess you're out-you're out of time, but let me ask you one last thing here. What is it that you would like for us to rule, and what remedy would you like us to order? Well, the way I-I brought the appeal to ask the court to clarify the legal issues, the two legal issues, and then to remand it back to the-to the district court and-and so that we can make our arguments, because I didn't spend a lot of time in this brief arguing the merits. I-I had hoped that what the court would do would be to point out the fact that the district court made a couple of legal errors and send us back, and-and it may be that the district court rules against us there after we've had a chance to make the arguments based upon the correct standard of review, but that's the remedy that I'm seeking, Your Honor. All right, we'll hear from the Appalachian Council at this point. Mr. Sirsik, is that the way to pronounce your name? Yes, Your Honor, thank you very much. You may proceed. Thank you, I-I appreciate it. I-I think that the most important thing to do when I'm starting my argument is to start at the beginning, and the beginning for the purposes of this case is the July 17, 2018 decision in which Lina denied Harrison's appeal for long-term disability benefits. Lina reached two conclusions that are relevant in that decision. First, it found that potentially disabling depression and anxiety conditions were subject to the pre-existing condition limitation. Mr. Murray spoke about that issue. The second item that Lina determined in that decision was when it addressed Ms. Harrison's argument that she was disabled by right hemispheric deficit disorder. Lina found at that time that there is no evidence from your medical providers that RHDD caused an inability to work, and that's at page ID 1172 in Lina's denial letter. That decision is what distinguishes Lina's decision in this case from so much of what there-the decision in the Acuno case. He relies upon it to suggest that there's a burden of proof on the claims administrator to prove an exclusion. The Acuno case involved a mental health time limitation on benefits, a 24-month limitation on those benefits. At the end of the Acuno decision, you have to read to the end, what the Court of Appeals does is it remands that case back to the administrator for a decision addressing the question of whether Ms. Acuno was disabled by her physical conditions. In this case, that decision has already been made. Do you dispute-is there-so contributed to by-contributed to as a phrasal verb usually means just exacerbates, but Acuno adopted it pretty narrowly or read it pretty-a similar phrase-pretty narrowly to require but-for causation. Do you concede that that but-for interpretation would carry over to your contract or do you have a way of distinguishing Acuno on the causation issue? I think on the causation issue, I don't think that the but-for causation standard necessarily applies. I don't think it matters in this case because of the facts of this but-for causation and is, you know, therefore sufficient for LIHNA to prevail regardless of at which level that language for contributed to by is defined by this court. I think that Judge Marbley got it right in his decision below. Judge Marbley didn't afford any deference to LIHNA's interpretation of the pre-existing condition limitation. His opinion explicitly says that he was not deferring to LIHNA. He applied the language as it was written and found that caused and contributed to was satisfied in this case and I don't think the evidence allows any other conclusion here. Suppose we disagree. Go ahead, Judge McKee. Just to make sure I understand what you're saying, are you also saying that he was right? That deference doesn't apply here? Firestone doesn't apply? Are you saying he was-the outcome was right? No, I'm saying that the judge's outcome was correct and that's, you know, I'm not sure that this panel can see the-or has seen in the docket. We had a minor issue early in the appeal where LIHNA filed a cross appeal specifically on that issue on the district court's decision to apply the de novo standard of review and the loose language in some Sixth Circuit opinions where the opinions say that the Sixth Circuit will apply the same standard that was applied by the district court when the proper articulation of that standard is that the Sixth Circuit will apply the same standard that the district court was required to apply and there are Sixth Circuit decisions that apply that correct language and I but absolutely LIHNA is fully convinced that under the standard articulated in Perez, it's entitled to the arbitrary and capricious standard of review and one of the difficulties with coming up to appeal on a case like this is LIHNA expects that it should win this case even under de novo review just like it did at the district court but if this panel issues a decision applying the de novo review improperly, it can create, you know, cascading effects in future cases where that improper standard can be argued. Why do you think-I grant you the point that the satisfactory proof language, our case law seems to interpret that as being sufficient to trigger firestone deference but that language read in context is tied to a determination of disability and LIHNA denied the claim on the basis of an exclusion and I think our case law also can be read that deference is not an all or nothing proposition that you read the plan and you determine from the terms of the plan what is entitled to deference and it's not clear to me from the terms of the satisfactory proof language in this plan that deference extends to the exclusion analysis as compared to only the disability determination. I think it's important to note that that LIHNA's decision was the decision about whether Ms. Harrison was entitled to disability benefits. It is the decision that the Perez case and so many other cases have applied the arbitrary and capricious standard. Well, I agree that she's not entitled to benefits because of the exclusion but in order to be entitled to benefits, you need to be both disabled and you need to otherwise not be disqualified and if you wanted deference to apply to everything, the plan could have easily said satisfactory proof that Harrison is entitled to benefits but that's not what it says. It says satisfactory proof that Harrison is disabled. Now, disabled is one requirement for benefits but it's not the only one. You also can't have fault within any of the exclusions so I view those as separate and distinct concepts and if a satisfactory proof only goes to the one concept, the expressiveness canon, it wouldn't apply to the others. Yeah, in this case, I think that that misses what I said at the beginning going back to LIHNA's July 17, 2018 decision where LIHNA found that there's no evidence from Ms. Harrison's that forces us onto the pre-existing condition issue is squarely within the satisfactory proof arbitrary and capricious standard of review. LIHNA decided that and found that Ms. Harrison was not she is able to make that proof without making the argument. I mean, that's one of the things that if we talk about side issues in this case, I think one of the issues with this case is the question why aren't we talking about this decision that LIHNA issued? LIHNA found that she wasn't disabled solely by RHDD. Plaintiff's argument is she's solely disabled by RHDD. Yeah, but you didn't really, I mean, this entire case has been briefed on the proposition that it's about the exclusion, not about the initial disability determination. I know there's a dispute about whether you actually conceded it, that she was disabled, but set aside that dispute. What's before us right now, it seems to me, is whether she falls within the pre-existing condition disqualification, not whether she's disabled. Well, as plaintiff's counsel argued in their reply brief, the appellant establishes the issues in the appeal, right? So, they presented the appeal, they're appealing this issue on, that was the basis for Judge Marbley's decision below, right? So, the district court was presented with all the arguments and the district court applied de novo review, his own review of the evidence, and his interpretation of the plan document, and told Ms. Harrison and her lawyers that they could not prevail. You know, that is, you know, the district court going to the facts and the conditions that are 100% most favorable to Ms. Harrison, and saying that even under those most favorable arguments, you can't win. And if you can't win on those, there's no reason to address the rest of it. And so, that I think is how we got to this point of, you know, the real focus being on these issues that are raised by the appellant in this appeal. And I think, you know, if I can transition a little bit, I think I missed out the standard of the burden of proof, which is related, I think, in some ways to this concept. If you go back and you look at the district court's decision, the district court addressed and responded to Ms. Harrison's arguments with respect to the burden of proof during the administrative appeals process. Her argument was that Lina bore the burden of proof when it was the decision maker during that claims and appeals process. In the district court's opinion, what Judge Marbley found was that Ms. Harrison's argument was wrong, that she bore the burden of proof because of the policy language that required her to bring the evidence to Lina. And so, when that's what the original issue on burden of proof was, the question is, how can that possibly change at the district court? You know, certainly there's authority out there that says the burden of proof in certain circumstances is on the claims administrator, but I think that that is often a misdescription and a confusion of standard of and it's important for our cases when we litigate these benefit claim cases. Even under de novo review, the district court and this court are applying a standard of review, not a standard of proof. And so, to argue that Lina is permitted to put the burden of proof on Ms. Harrison at the based on her medical evidence, she has access to the evidence and Lina doesn't. So, the policy rightfully... Why shouldn't we analogize it to the federal rules of civil procedure and discovery there? Oftentimes, somebody who does not bear the burden of proof has a duty to produce documents during the discovery process. And if they don't produce the documents, they can be sanctioned with up to dismissal. And I think that's kind of what your rule of contemplates. If you don't give us the ability to make the determination, then we'll just dismiss the claim on that procedural basis almost alone. But that doesn't mean that the party bears the burden of proof. It just means they have a burden of cooperating and resolving the litigation. So, I don't view the cooperation provision as anything different than the federal rules of civil procedure mandating discovery. And both sides have that duty, including the side that doesn't bear the burden of proof. So, the fact she had a duty to cooperate doesn't say much to me that she has the burden of proof. Yeah. I think I understand where you're coming from, but I disagree. I think that the language in this policy placed the burden of proof on her and Lina explicitly told her in its initial denial that in order for you to appeal this denial, you need to provide us with evidence that demonstrates this pre-existing condition limitation issue doesn't apply, or that you're disabled by something else. So, the very process that works through the Department of Labor's claims and appeals process places that burden on the benefit claimant, and it doesn't translate over to the district court level. At the district court level, the one thing that the parties agree on in this case is that the district court and this court are limited to the administrative record. So, the administrative record is made during that process, and there is no burden of coming forward with additional evidence at the district court level. There is no discovery in the Sixth Circuit, and I think that's one of the problems with relying on potentially analogous decisions from other circuits. There are other circuits that will allow outside evidence in de novo review cases, so we can't look at those and can't consider those. The proof in this case is the administrative record, and that's what Judge Marbley looked at when he found that Ms. Harrison could not prove her case and ruled in favor of Lina. I think my time may be up, so if there are no other questions. All right. Will your rebuttal at this point? Thank you, Your Honor. I'll just make a couple of brief points. First, I'm a little perplexed now Lina ever decided whether my client was disabled or not. If they didn't ever decide she was disabled, then I'm not sure where we go because I don't know how you get to the exclusion if you don't start with the fundamental principle that Lina is disabled. In the district court, I went back and read the briefs that were filed in the district court. Lina never argued the question of disability. The entire argument was just like it has been in this court about the application of the exclusion. I think that's why the district court said in its opinion that Lina didn't dispute disability. The language in Perez that prompted the court to grant Firestone deference was that Aetna had the right to quote, all required proofs for the receipt of benefits. That's fundamentally different than all required proofs of disability. I think that distinguishes Lina's language from the Perez. The only other point is the language in Acuno is almost identical. Granted, it applied to a different provision, but it's identical to the exclusionary language that we have here. The district court misapplied the burdens of proof. We'd like a chance to go back and make our argument to the district court with the understanding that Lina's got the burden of proof. With that, I thank you, Your Honor. All right. Well, the case is submitted. Thank you for your arguments.